

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,925

### EX PARTE CATHY LYNN HENDERSON, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NO. 94-2034 IN THE 299TH DISTRICT COURT
### TRAVIS COUNTY

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

## DISSENTING OPINION

Something is missing here. While the Court states that it accepts the trial court's recommendation granting relief, it does so without providing any legal basis for that ruling, and I cannot find a ground upon which relief should be granted. And to justify its decision, the Court makes a quantum leap from "advances in science" to granting relief, which presents a whole new dilemma for the criminal justice system and this case in particular.

The real issue in this case is whether the admission of potentially unreliable evidence requires this Court to grant relief regardless of the state of the remaining record. Eleven expert witnesses testified at Applicant's writ hearing, some for both sides. The trial court found *all* of the experts credible but focused on a change in the testimony of expert Dr. Bayardo to conclude that Applicant had proven by clear and convincing evidence that no reasonable juror would have convicted her in light of the "new evidence." This Court now defers to that conclusion. However, nowhere in Dr. Bayardo's altered testimony does he state or indicate that his original opinion was false, nor does he refute the medical science relied upon by the other State experts. Instead, Dr. Bayardo changed his opinion on the manner of death from "homicide" to "undetermined" based upon changes in the science upon which he relied. While a change in Dr. Bayardo's testimony could render his opinion unreliable, "unreliable" testimony does not equate with "false testimony" or "innocence," nor does it automatically require a new trial.

The admission of expert testimony is governed by Texas Rule of Evidence 702, and to be admissible under this rule, the party offering the scientific expert testimony must demonstrate by clear and convincing evidence that such testimony is both relevant and reliable. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). The focus of the reliability analysis is to determine whether the evidence has its basis in sound scientific methodology such that testimony about "junk science" is weeded out. *Jordan v.*

*State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996).

Whether the science at issue is a "hard" science[1] or a "soft" science,[2] "reliability should be evaluated by reference to the standards applicable to the particular professional field in question." *Coble v. State*, 330 S.W.3d 253, 274 (Tex. Crim. App. 2010); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (holding that when the subject of the expert's testimony is scientific knowledge, the basis of his or her testimony must be grounded in the accepted methods and procedures of science). Therefore, a change in the science upon which an expert relied in providing his trial testimony might indeed undermine the reliability of his testimony. But it does not necessarily follow that the testimony was "false" or that the existence of new science necessarily implicates innocence. For example, in this Court's unanimous opinion in *Ex parte Miles*, 359 S.W.3d 647 (Tex. Crim. App. 2012), we adopted the trial court's conclusion that the "gunshot-residue standards, as testified to at trial, are no longer reliable." *Id.* at 663. However, we did not adopt the trial court's conclusion that "Applicant should also be granted relief, independently, on the ground of flawed forensic testimony." *Id.* Instead, we looked to all of the evidence presented and only then determined that actual-innocence relief was warranted. Other decisions from this Court recognize both the advancement in science and the legislative directive to apply that

---

[1]*Daubert*, 509 U.S. 579; *Kelly*, 824 S.W.2d 568.

[2]*Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998).

science to our caselaw through Chapter 64 of the Texas Code of Criminal Procedure. While further testing may prove to be inconclusive or even exculpatory, relief may nonetheless be denied based on the volume of other evidence. *See Gutierrez v. State*, 337 S.W.3d 883 (Tex. Crim. App. 2011); *Prible v. State*, 245 S.W.3d 466 (Tex. Crim. App. 2008).

Furthermore, even if a change in the underlying science means that the expert testimony was unreliable, it does *not* automatically result in a due process violation (and thus a new trial). An additional analytical step is required. Only when the admission of unreliable testimony was harmful is due process implicated and a new trial appropriate. *See Coble*, 330 S.W.3d at 280. Accordingly, relief should only be granted if the applicant demonstrates the error affected his or her substantial right to a fair trial. *See* Tex. R. App. Proc. 44.2(b); *Coble*, 330 S.W.3d at 280 (explaining that harm occurs when the error had a substantial and injurious effect or influence in determining the jury's verdict). A criminal conviction should not be overturned by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

This reliability analysis is consistent with our policy interest in the finality of convictions. The Supreme Court has emphasized its enduring respect for "the State's interest in the finality of convictions that have survived direct review within the state

court system." *Calderon v. Thompson*, 523 U.S. 538, 555 (1998). "Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality op.). To abide by Judge Cochran's suggestion that any intervening scientific development should result in a new trial would seriously undermine the stability of our criminal justice system. Most convictions involve some type of scientific evidence, whether hard (*e.g.*, DNA or urinalysis) or soft (*e.g.*, eyewitness identification or forensic psychiatrists testifying about future dangerousness). Rarely is a case wholly dependent on science alone. Thus, if we were to grant a new trial with every scientific advancement, without proof that the original science was indeed faulty, the finality of convictions would be illusory. While the evolution of science is important to the improvement of our system, each case must be decided individually, taking into account all of the evidence.

In summary, intervening scientific developments might result in unreliable expert testimony, and the admission of this unreliable evidence might rise to the level of a due process violation. But this case does not present us with such a scenario. Dr. Bayardo changed his opinion on the manner of death from "homicide" to "undetermined" based upon changes in the science upon which he relied. Perhaps this makes Dr. Bayardo's trial testimony unreliable, but as Judge Cochran acknowledges in her concurring opinion, this "does not mean applicant is actually innocent of homicide" or that "[Dr. Bayardo's] trial testimony was 'false' at the time it was given, based upon the state of scientific

knowledge that he relied upon at that time." The "new evidence," even if based on "new science," must still affirmatively establish that the applicant is entitled to relief. *See Ex parte Spencer*, 337 S.W.3d 869, 879 (Tex. Crim. App. 2011).

Additionally, when the entire record is considered, it is clear that Appellant's substantial rights to a fair trial were not affected by the admission of Dr. Bayardo's testimony. *See Coble*, 330 S.W.3d at 280 ("In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probably impact of the error upon the rest of the evidence."). As Judge Keasler competently outlines in his dissenting opinion, there is ample evidence to support that Appellant intentionally caused Brandon's death. *See* TEX. PENAL CODE § 19.03(a)(8). Certainly, in this context, Dr. Bayardo's unreliable testimony could not have a substantial and injurious effect or influence in determining the jury's verdict. *See Coble*, 330 S.W.3d at 280. The record provides fair assurance that the error would not influence a jury, or would have but a slight effect. *See Johnson*, 967 S.W.2d at 417.

For these reasons, I respectfully dissent.

Hervey, J.

Filed: December 5, 2012

Publish